IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VINCENT GARRETT PROVINES, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO.  4:21cv372 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Movant, Vincent Garrett Provines, a former federal inmate, proceeding *pro se,* filed this

motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[1]

The above-styled action was referred to the undersigned magistrate judge pursuant to 28

U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate

Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Background

By way of an Indictment entered December 13, 2017, Movant was charged with Cyber

Stalking in violation of 18 U.S.C. §§ 2261A(2)(B) and aiding and abetting in violation of 18 U.S.C.

§ 2. *United States v. Provines*, 4:17-CR-208(1) (Dkt. #1).  On July 9, 2018, Movant proceeded to

trial (Dkt. #63 ).  A jury returned a verdict on July 11, 2018, finding Movant guilty.  (Dkt. #67).

---

[1] According to Respondent, Movant completed his term of supervised release on November 9, 2022, thereby releasing him from being "any prisoner in custody under sentence of a court" pursuant to 28 U.S.C. § 2255.  *See United States v. Morris*, 592 F. App'x 303, 304 (5th Cir. 2015) (defendant was no longer "in custody" because her federal sentence had "fully expired.").

The court signed the Judgment on January 24, 2019, sentencing Movant to a thirty-three month term of imprisonment (Dkt. #117). Movant filed a Notice of Appeal and the United States Court of Appeals for the Fifth Circuit affirmed the conviction and sentence on December 17, 2019, and the mandate issued on January 8, 2020 (Dkt. #149); *see also United States v. Provines*, 788 F. App'x 281 (5th Cir. 2019). Movant subsequently moved for a rehearing which the Fifth Circuit denied on February 14, 2020. Movant did not file a petition for writ of certiorari with the United States Supreme Court.

Movant filed the above-referenced motion to vacate, set aside or correct sentence on May 14, 2021. *Provines v. United States*, 4:21-CV-372 (Dkt. #1). Movant asserts the following points of error:

1.  Movant's constitutional rights were violated by the United States Military as the incident alleged occurred during a time when Movant was not subject to the Uniform Code of Military Justice; the military had no personal jurisdiction over Movant;

2.  Ineffective assistance of trial counsel during voir dire when Panelist No. 9 affirmed she could develop feelings of sympathy or dislike toward Movant and trial counsel failed to ask follow-up questions to ensure Panelist No. 9 could remain impartial;[2]

3.  Ineffective assistance of trial counsel for failing to present impeaching and exculpatory evidence in his possession relating to search warrant returns;

4.  Ineffective assistance of trial counsel for failing to investigate email and phone records that would have corroborated that Movant's co-defendant's testimony was fabricated;

5.  *Brady*[3] violation by the prosecution in withholding exculpatory evidence in the form of Facebook messages;

6.  *Brady* violation by the prosecution in withholding exculpatory phone records;

---

[2] Attorney Jeff King represented Movant during trial.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

7.    Prosecutorial misconduct for sponsoring knowingly perjured testimony by Movant's co-defendant;

8.    Prosecutorial misconduct by presenting inflammatory evidence during trial and making inflammatory comments during closing arguments;

9.    Prosecutorial misconduct in using protected speech under the First Amendment;

10.   Ineffective assistance of trial counsel during pre-trial for failing to file a Rule 12(b) motion;

11.   Ineffective assistance of trial counsel for allowing Movant to be sentenced on a § 3553 factor that was incorrect;[4]

12.   Ineffective assistance of counsel on appeal for failing to argue prosecutorial misconduct and for not developing record on points of error 3, 4, 7, & 8;

13.   Cumulative error due to ineffective assistance of counsel; and

14.   Cumulative error due to prosecutorial misconduct;

*Id*. Movant filed a Memorandum of Law in Support on December 13, 2021 (Dkt. #10).

Respondent was ordered to Show Cause on June 14, 2022 (Dkt. #12) and filed a Response on November 15, 2022 (Dkt. #21). Respondent argues several of Movant's arguments appear to be procedurally barred as they should have been argued on direct appeal and/or lack merit. *Id*. Movant filed a Reply on December 29, 2022 (Dkt. #24) to which Respondent filed a Sur-Reply (Dkt. #26). Movant filed a Response to the Sur-Reply on January 17, 2023 (Dkt. #27). This motion to vacate, set aside, or correct sentence is now ripe for consideration.

<u>Standard of Review</u>

The first paragraph of 28 U.S.C. § 2255 sets out the claims which are cognizable under the statute. These are: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was

---

[4] Attorney Kevin Ross represented Movant during sentencing and on appeal.

in excess of the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack.

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164-65 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991). A defendant can challenge his conviction or sentence after it is presumed final on issues of constitutional or jurisdictional magnitude only, and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the errors. *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. It is reserved for transgression of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 33, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1995). Further, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v United States*, 575 F.2d 515, 517-18 (5th Cir. 1978)).

Analysis

Procedural Bar

In points of error 1, 5-9 and 14, Movant argues a lack of jurisdiction, claims of prosecutorial misconduct for *Brady* violations, for sponsoring knowingly perjured testimony, presenting inflammatory evidence during trial, making inflammatory comments during closing arguments,

and using protected speech under the First Amendment.  Movant also argues all of these incidences of prosecutorial misconduct constitute cumulative error.  None of these arguments were argued on appeal.  With the exception of points of error 1, 7, 8 and 9, Movant does not argue cause and prejudice to overcome the procedural default.[5]  As a result, Movant's points of error 5-6 and 14 are procedurally defaulted.  *See United States v. Frady*, 456 U.S. 152, 166-67 (1982) (defendant must show cause and prejudice to overcome procedural default); *United States v. Alanis*, 88 F. App'x 15, 23 (5th Cir. 2004) (since defendant failed to raise prosecutorial misconduct at trial or direct appeal, he must show both cause and prejudice for procedural default).  Nor has Movant demonstrated actual innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'actual innocence' means factual innocence, not mere legal insufficiency.").

Ineffective Assistance of Counsel

In order to establish ineffective assistance of counsel, Movant must prove counsel's performance was deficient, and the deficient performance prejudiced Movant's defense.  *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984).  Because Movant must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim.  *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential.  *Strickland*, 466 U.S. at 689. As a result, there is a strong presumption that counsel rendered reasonable, professional assistance, and that the challenged conduct was the result of a reasoned trial strategy.  *Id.; United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009).  To overcome the presumption that counsel provided reasonably effective assistance, a movant must prove his attorney's performance was

---

[5] As to these points of error, Movant states in a conclusory fashion that his counsel was ineffective for failing to argue these claims during trial and/or on appeal.  The court will proceed to the merits of these claims out of an abundance of caution.

objectively unreasonable in light of the facts of the movant's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689-90; *Fields*, 565 F.3d at 294.

In addition to proving counsel's performance was deficient, a movant is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. The movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Mere allegations of prejudice are insufficient; the movant must affirmatively prove, by a preponderance of the evidence, that he was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

The Fifth Circuit has stated that conclusory allegations of ineffective assistance are not sufficient to raise a constitutional issue. *United States v. Whitehead*, 393 F. App'x 226, 227 (5th Cir. 2010) (citing *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990)). Bare, conclusory allegations unsupported by other indicia of reliability in the record fall short of the *Strickland* requirements for determining ineffective assistance of counsel. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 n. 2 (5th Cir. 1983).

A.      Counsel Failed to Challenge Jurisdiction

With respect to point of error 1, Movant argues his constitutional rights were violated by the United States Military as the incident alleged occurred during a time when Movant was not subject to the Uniform Code of Military Justice and counsel was ineffective for failing to challenge this. Movant states:

> The military had no personal jurisdiction over [Movant]. The alleged crime did not take place on military property. NCIS agents conducted an investigation to enforce a non-military offense. NCIS violated DOD directives and instruction and violated federal law by conducting an investigation into individuals not subject to military

6

law.  NCIS agents usurped their statutory and constitutional authority by obtaining a search warrants [sic] for [Movant's] property, interviewing witnesses, and interrogating Movant.

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors.  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent.  *Bousely v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . .or that he is actually innocent.'").

Here, Movant argues trial counsel failed to investigate the law and facts as they apply to this case and did not raise this issue as cause for the procedural default.  Specifically, Movant argues trial counsel should have challenged the search warrants prior to trial which would establish the military had no jurisdiction over this case.  The record reflects, however, this claim of ineffective assistance of counsel lacks merit as there was no basis to challenge jurisdiction.  Counsel in his affidavit stated the following:

Movant alleges I was ineffective by failing to raise issues surrounding a violation of his "constitutional rights . . . by the United States Military."  In short, that the Naval Criminal Investigative Service (NCIS) violated federal law and military policy conducting an investigation into Movant without jurisdiction and authority to do so.

As background, it is important to note that Movant was a commissioned officer in the U.S. Marine Corps at the time of his arrest for this offense.  And as the victim testified at trial, her first report to law enforcement was made by calling a general phone number to NCIS, since she knew Movant was in the Marines.  NCIS then

confirmed the identity of Movant (then a 2nd Lieutenant) and initiated an investigation, to include, as Movant alleges, subpoenas, warrants, and witness interviews.

As a former military judge advocate and a civilian attorney who still represents active duty military members, I have been involved with hundreds of military investigations. The subjects of these military investigations range from those accused of committing offenses overseas, to civilian crimes such as DWIs, to military-specific offenses such as war crimes and unauthorized absence. Military investigative agencies have jurisdiction over anyone still on active duty and, in some circumstances, those no longer on active duty.

In this case, Movant was an active duty officer at the time of the offense, so he was properly under the jurisdiction of the U.S. Marine Corps and NCIS. The military has concurrent jurisdiction with state and federal jurisdictions to prosecute crimes committed by active duty service members, regardless of where the offense occurred. Therefore, NCIS' investigation into Movant did not violate his constitutional rights. In fact, NCIS was duty-bound to conduct a thorough investigation. Thus, there was no issue to raise regarding jurisdiction and any issue raised would have been groundless.

Affidavit of Jeffery C. King (Dkt. #21-1, pgs. 2-3).[6] To the extent Movant now asserts a violation of the Posse Comitatus Act ("PCA") somehow affords him relief in this habeas petition, any such claim also lacks merit. Assuming, without finding, some violation occurred, Movant has not demonstrated widespread and repeated violations of the PCA warrant exclusionary sanction. *United States v. Benavides*, No. SA-19-CR-152-XR, 2020 WL 5984062, *3 (W.D. Tex. Oct. 8, 2020) (citing *United States v. Salinas*, No. 19-50936, 2020 WL 5494483 (5th Cir. Sept. 9, 2020)). As a result, Movant has failed to show deficient performance or prejudice. This claim should be denied as procedurally defaulted and, alternatively, as lacking in merit.

---

[6] Movant's own exhibits establish he was on active duty during the offense in question. (Dkt. #10-3, pgs. 4-11). Movant was administered the oath of office and commissioned as a Second Lieutenant on December 17, 2016, and was then issued "Assignment Active Duty Orders" on March 12, 2017. *Id.* Three of the communications at issue occurred after March 12, 2017. 4:17-CR-208, Government Admitted Exhibits (Dkt. #74, Ex. 5); Trial Transcript, Vol. 3 (Dkt. #107, pgs. 24-25).

B.     <u>Counsel Failed to Ask Follow-Up Questions of Panelist No. 9</u>

Movant here argues that a potential juror, Panelist No. 9, affirmed she could develop feelings of sympathy or dislike toward Movant and counsel, who indicated he was aware of this response, failed to ask follow-up questions to ensure Panelist No. 9 could remain impartial. Movant argues Panelist No. 9 was ultimately empaneled on the jury as Juror No. 2.

A review of the record in this case reveals that Movant's account of what occurred is incorrect.  During voir dire, the prosecution asked the following question:

| | |
|---|---|
| MR. JACKSON: | It is possible during this case you may learn some things about the defendant that make you like him, or dislike him. You might develop certain affinity for him, some sympathy for him, or you may decide you really don't like him as a person.  It is fine to have those feelings but you cannot let those feelings affect your decision.  You have three tools to make the decision and that's it. |
| | So, juror number 5, I don't think we've heard from you.  Do you think that would be difficult if you develop any feelings about the defendant, either favorable or unfavorable as a person, would it be difficult for you to sit that aside and make a decision just based on the law, the evidence, and your commonsense evaluation of that? |
| PANELIST: | I don't think it would be a problem at all.  The system is set up to – you know, the prosecution proves its case or they don't. There's people you like and people you don't like everywhere, that's just the way life works.   So, the prosecution does their best to prove the case and defense counters that.   As a technical person I count facts and traceability and things like that.  So, I don't – I don't feel like that would be a problem. |
| MR. JACKSON: | Okay. Thank you very much. |
| | Does anyone disagree with juror number 5?  And its fine if you do, it's just Mr. King and Judge Crone and I would like to know that before we possibly select you to serve on the jury. |

> Does anyone think they might develop feelings of sympathy or dislike that could affect their decision in this case? And if you do, just raise your card with your number up and we will note it, and that's all.
>
> Okay. Juror number 3, juror number 4, 23, 36. Okay. And juror number 9.

4:17-CR-208, Trial Transcript, Vol. 2 of 4, pgs. 94-96 (Dkt. #106). The record confirms that none of the jurors were asked follow-up questions with respect to their answer on whether they might develop feelings of sympathy or dislike.[7] As a result, there is no indication on the record as to whether Panelist No. 9 actually held some bias towards Movant. Movant, therefore, cannot show prejudice.[8] Regardless, counsel in his affidavit states that his decision to keep Panelist No. 9 on the panel was strategic.

> Counsel in his affidavit stated the following:
>
> First, I concluded my voir dire examination of the panel as I always do: I disclose unpleasant facts, if any, that will come out and ask the entire panel generally if, based on their own personal experiences, they would consider themselves an impartial juror. I posed this question to the panel at the conclusion of voire dire and, with the exception of #23, the entire panel, including #9, indicated that they could be impartial. See Dkt. #106, p. 104.
>
> Secondly, after reviewing the transcript, I do recall Panelist #9 and the strategy behind keeping her on the panel. First, I had a good rapport with #9 and believed that her response could be favorable to our theory of the case. Part of our theory was that Movant's co-defendant was responsible for the criminal conduct and acted on her own without the knowledge or consent of Movant. And that, despite some appalling errors in judgment, the Movant was also a victim in this case since he had

---

[7] Two of the jurors were called up for further questioning based upon their answer to another question (Panelist No. 23) or a request to speak privately about a matter (Panelist No. 36). *Id.*, pgs. 122-23 & 130-31.

[8] On appeal, Movant argued he was denied his Sixth Amendment right to an impartial jury. 788 F. App'x at 282. The Fifth Circuit stated, "[t]his claim arises from the seating of a juror despite her indication that she could possibly develop feelings of sympathy or dislike that could affect her decision in a cyberstalking case. However, the defense did not pose any questions to the juror on that point despite the opportunity to do so, and it did not object to the jury as seated." *Id.* It is unclear if this challenge was to Panelist No. 9 or another panelist. *Id.* After considering the appropriate appellate standard of review, the Fifth Circuit said Movant could not prevail under either standard. *Id.*

no knowledge that Ms. Marquez was holding herself out as Movant in writing emails to the victim from his email account. Therefore, my thought process was that a juror (in particular a female juror) who indicated some possible bias toward the "sender" of the messages may view our theory favorably. Indeed, part of our theory was that a jealous and scorned wife of Movant was responsible for the criminal conduct, and a juror who was not afraid to disclose *potential* bias could be favorable to the defense.

Affidavit of Jeffery C. King (Dkt. #21-1, pgs. 3-4). "An attorney's actions during voir dire are considered to be a matter of trial strategy. A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). Counsel here had a sound strategic decision in keeping Panelist No. 9. Movant has failed to show ineffective assistance or prejudice. This claim should be denied as lacking in merit.

      **C. & D.**     <u>Counsel Failed to Present Impeachment and Exculpatory Evidence & Counsel Failed to Investigate Phone Records</u>

Movant argues trial counsel failed to present "impeaching and exculpatory evidence in his possession." Specifically, Movant alleges trial counsel had in his possession search warrant returns that were allegedly exculpatory and contradicted the testimony of the Government's key witness, Movant's co-defendant. According to Movant, these search warrant returns would have exposed her testimony to be untrue; specifically, that Movant provided information to her to use in the initial harassing email. In addition, Movant argues counsel knew that Movant did not text his co-defendant language to use in the initial harassing email and that trial counsel failed to obtain AT&T phone records that would have provided "irrefutable" evidence that Movant's co-defendant's testimony was fabricated. Movant states that counsel failed to investigate the contents of the initial email and that, had he done so, he would have been properly prepared to question the victim in this case.

In his affidavit, counsel states that he disagrees the warrant returns contained "exculpatory evidence" and that his hours-long cross-examination of Movant's co-defendant uncovered several inconsistencies in her story. Affidavit of Jeffery C. King (Dkt. #21-1, pg. 4). Counsel informs the court that he reiterated these inconsistencies during closing arguments and that any and all evidence at his disposal was used to impeach her credibility. *Id.* Counsel goes on to say:

> As stated previously, I met with Movant often both in person and over the phone. We discussed every page of discovery at length and multiple times. He was very familiar with the theory of our defense, anticipated witness testimony, as well as all discovery.
>
> I can say without hesitation that AT&T phone records would not have provided the "irrefutable evidence" that Movant claims. Presumably, Movant is referring to our theory that Movant did not *send* Ms. Marquez certain messages directing her to what to email the victim, as she testified. However, the *absence* of these messages in the government's case, in my opinion, provided much more reasonable doubt. In fact, given my knowledge of Movant's case and his activities, a complete phone record could have exposed additional facts that would have put Movant in an unfavorable light.

*Id.*, pg. 5.

Here, it is apparent that Movant now disagrees with counsel's trial strategy. In measuring whether counsel's representation was deficient, Movant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). "It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged ineffectively by hindsight." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court in reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional judgment or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). What defense to use at trial is strictly within the gambit of trial strategy. A movant

questioning trial counsel's strategy faces a difficult challenge because federal courts presumptively

defer to an attorney's reasoned, strategic decisions. *Titsworth v. Dretke*, 401 F.3d 301, 310 (5th

Cir. 2005) ("We are to accord substantial deference to counsel's performance, applying the strong

presumption that counsel performed adequately and exercised reasonable professional

judgment."). *See Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) ("We will not find

inadequate representation merely because, with the benefit of hindsight, we disagree with

counsel's strategic choices") (citing *Strickland*, 466 U.S. at 689-90); *see also Garland*, 717 F.2d

at 206) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the

entire trial with obvious unfairness."). This is precisely the kind of strategic choice that *Strickland*

instructs the courts not to second-guess, and this court will refrain from doing so. Movant has

failed to overcome this presumption and these claims should be denied as Movant has failed to

show ineffective assistance or prejudice.

    E.  <u>Counsel Failed to Expose the Government's Misconduct Allowing Perjured Testimony</u>

    With respect to point of error 7, Movant argues the Government knowingly allowed

perjured testimony that was material to the case. Specifically, Movant states:

> At trial NCIS case agent testified that the initial email from [Movant's] ou.edu
> account was the main focus. This was corroborated by Ms. Marques. Ms. Marques
> stated [Movant] aided her by composing a text message and sending her revealing
> photographs of his ex girlfriend. Ms. Marques stated she composed an email on
> her account and after receiving texts from [Movant] she copied and pasted the text
> message into the composed email. Next, Marques testified she sent the email from
> her email to [Movant's] ou.edu account. Of the 1100 pages of text messages
> admitted into evidence, no text messages support Ms. Marques assertion. NCIS
> case agent testified a complete download of Ms. Marques' phone occurred. Never
> mentioning any missing texts. Ms. Marques later testified she had shown these
> deleted messages to NCIS Special Agent Elkhier, who was present in the court
> room at the time. Of the email's [sic] retrieved as part of a search warrant by NCIS,
> no email was sent from Ms. Marques' account to [Movant] corroborating her story.

The government had every indication, in fact knew, that Ms. Marques' testimony was false.

This was not raised on appeal.  Trial counsel is ineffective for failing to expose the governments [sic] misconduct.  Due process violations of this nature are also properly brought in a 2255 where a sufficient record can be present to the court.

4:21-CV-372, Original Motion, pgs 14-15 (Dkt. #1).

This claim lacks merit for the reasons outlined above.[9]  Counsel's affidavit lays out his trial strategy in focusing on the absence of the messages in the Government's case.  Counsel cross-

---

[9] Movant's co-defendant testified to the following:

Q.  Okay.  Well can you explain to the jury then why in those text messages there is no evidence that he sent you draft content of what he wanted included in those emails?
A.  Yes, I can.  I specifically have spoken to Mr. Tatum about –
Q.  I'm sorry, who?
A.  Mr. Tatum.
Q.  Okay.
A.  About that particular – those particular messages not being there.  I – I can't say with any certainty what exactly happened to them, but I do know that up until right before I spoke to the NCIS agents that they were still there.  Actually, right before that.  The pictures, as well as the text was sent to me. And I can't say whether while I was an inpatient he deleted them, because I don't know what happened to them.  Or if while – prior to finding out that my – that I was pregnant, I did drink heavily.  And I don't know – I know a couple of times I – I talked – we talked about things and trying to put this behind us.  I don't know if I deleted them, I don't know.  But the fact that they are – that they are deleted is one thing.  But the fact that we were trying to make it seem like they didn't exist is another.  Because they did.
Q.  And I'm assuming you have the same explanation for the images that you say were texted from Vince to you?
A.  Yes.
Q.  Okay.  So that would be – it would be I guess draft portions of the email and the images that were texted from Vince to you, all of the information that is corroborated in your testimony was deleted – all of the information to corroborate your testimony was deleted?
A.  Pertaining to that message, yes.  Pertaining to the first message that was sent.

****

Q.  Do you agree with me that the images and text messages if they did exist, are critical in supporting that Vince helped you write this email, right?
A.  Yes.  And the phone that they were sent from and most likely deleted off of is in my possession.  I don't know where it is because we – we moved from our apartment but it is not in working order.  And if there was any way for those to be extracted off of there, I would be willing to hand that over so that you could see.
Q.  I appreciate that.  Did you tell that to the agents at the time that they existed?
A.  I did, yes.

examined Movant's co-defendant extensively about her recollection of how she received and sent the images and email. Trial Transcript, Vol. 3 of 4 (Dkt. #107, pgs. 118-60; 165-67). Counsel states in his affidavit that this cross-examination led the defense to successively raise the absence of the messages in the Government's case before the jury. Affidavit, pg. 4. Counsel goes on to conclude, "in reviewing the transcript of cross-examination, I still maintain that the defense successfully demonstrated that the co-defendant Ms. Marquez acted alone in sending the messages that formed the basis for the indictment in this case." *Id*. This court will not second-guess counsel's trial strategy. The record simply does not support Movant's claim of prosecutorial misconduct. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Counsel is not required to file frivolous motions or make frivolous arguments. *Koch v. Puckett*, 907 F.2d 523, 527 (5th Cir. 1990); *Green v. Johnson*, 160 F.3d 1029, 1036-37 (5th Cir. 19983). This claim of ineffective assistance of counsel should be denied as Movant has neither demonstrated ineffective assistance or prejudice.

F. Counsel Failed to Challenge Improper Remarks by Prosecution

As to point of error 8, Movant argues the Government engaged in prosecutorial misconduct by (1) presenting inflammatory evidence during trial that the court previously ruled inadmissible under 404(b) and (2) by making inflammatory comments when the Government asked the jury to

---

Q. Okay. So you told the agent that these existed at one time but they are not here now, right?
A. Yes. And since I changed phones they are – they weren't able to extract the old deleted text message, as well.
Q. And is the agent you told that to Special Agent Elkheir who is here today?
A. Yes, that's correct.
Q. And when was that?
A. That would have been last Monday – last Monday when I met with him.

Trial Transcript, Vol. 3 of 4 (Dkt. 107, pgs. 133-34; 136).

convict on an erroneous application of the law during closing arguments.  Movant than states counsel was ineffective for failing to challenge these remarks.

As to Movant's claim that the prosecution introduced inadmissible 404(b) evidence, Movant states:

> The United States Attorney's office filed a 'Notice of Intent to Use Evidence Under FRE 404(b).  Doc No. 49.  The government requested to introduce evidence that [Movant] assaulted Marquez.  [Movant] [sic] counsel filed a motion in limine.  Doc 53.  The trial court found, "that the probative value of such evidence is substantially outweighed by its prejudicial effect as to [Movant]."  Doc. No. 59 p 8.

> During trial AUSA Tatum moved to admit government's exhibits 8 (all text messages between [Movant] and Marquez, and government's exhibit 9 (summary of text messages between [Movant] and Marquez.  ROA 107.2340-2341.  The government redacted text messages referencing assault in government exhibit 9. However, the government did not redact these text messages in government exhibit 8.  Compare:  ROA 74-7.1138-1140 to 74.9. 1839-1841; ROA 74-7.1071-1072 to 74-9.1823-1824; ROA 74-8.1140 to ROA 74-9.1841.  These prejudicial messages were introduced to the jury, and available during deliberation.

> Prior to the start of trial, AUSA Tatum specifically told King and [Movant] that the messages had been redacted in both exhibits.  The government's subversion of the court's ruling infringes upon [Movant's] right to due process of law.  This type of prosecutorial misconduct must be condemned.

> Trial counsel can also be seen as ineffective.  Counsel should have reviewed government's exhibit 8 prior to allowing it to be admitted.  Counsel has a duty to make timely objections.  There is no sound trial strategy to allow this exhibit to be admitted.

Memorandum, pgs. 16-17 (Dkt. 10).  Absent from this claim is any assertion that the jury actually ever saw or considered any of the text messages that were contained in Government's Exhibit 8, let alone any messages that might have been inadmissible under Federal Rule of Evidence 404(b). The record reflects that the Government never discussed the excluded evidence of family violence during trial as instructed by the court.  The only reference to Exhibit 8 during trial was one statement that it contained the full copy of thousands of text messages between Movant and his co-defendant whereas Exhibit 9 contained the summary of the texts in redacted form.  Trial

Transcript, Vol. 3 of 4 (Dkt. #107, pg. 41). The Government admitted both but never referred to Exhibit 8 in the trial or argument following its admission. If the text messages were discussed, only Exhibit 9 was referenced by the Government. *Id*., pgs. 86, 91-92, 94, 109, 160, 162, 164 & 165; Trial Transcript 4 of 4 (Dkt. 108, pgs. 36, 42, 71-72). Given the overwhelming evidence of Movant's guilt, the fact that no testimony was elicited as to the 404(b) evidence, that Exhibit 8 was never discussed with the jury, and that it contained thousands of messages that were likely unread, Movant cannot show prejudice as to any impropriety in its admittance or counsel's failure to object. The Sixth Amendment guarantee of effective assistance of counsel does not entitle the accused to error-free representation. *Williams v. Maggio*, 695 F.2d 119, 123 (5th Cir. 1983).

With respect to Movant's claim of inflammatory comments during closing arguments, Movant offers nothing more. This court cannot discern what inflammatory comments Movant references to evaluate any alleged impropriety. This claim is denied as conclusory. *Ross*, 694 F.2d at 1011-12 n. 2.

G. <u>Counsel Failed to Assert a First Amendment Challenge</u>

With respect to points of error 9 and 10, Movant states "the government argued that some of the alleged conduct occurred after a national news story was released. [Movant's] communications should be protected under the [F]irst [A]mendment because he was speaking to [sic] about a story of national importance." Movant states counsel was ineffective for failing to raise this claim, stating counsel informed him that he filed "a motion under rule 12b challenging the constitutionality of the prosecution under the first amendment." With respect to this claim, counsel stated in his affidavit:

> Movant claims a First Amendment violation and that trial counsel was ineffective
> in failing to file a "motion under Rule 12b challenging the constitutionality of the
> prosecution under the First Amendment." First, I do recall researching the issue
> and discussing it with Movant. Second, I did not file a motion under Rule 12b and

> never would have told my client that I did.  I have filed similar motions in the past and am familiar with the precedent regarding the constitutional issues surrounding these types of cases, and I did not believe that the facts of this case warranted the filing of any such motion.  In fact, given the facts of this case, it could have weakened our case at trial.

Affidavit, pg. 6 (Dkt. 21-1).  Counsel is not required to file frivolous motions or make frivolous arguments.  *Koch*, 907 F.2d at 527; *Green*, 160 F.3d at 1036-37.  Moreover, counsel's strategy in not pursuing any such motion in this case is entitled to deference.  *Titsworth*, 401 F.3d at 310.  Movant has failed to show ineffective assistance and this claim is denied.

### H. Counsel Allowed Movant To Be Sentenced on a § 3553 Factor That Was Incorrect

As to point of error 11, Movant complains that "counsel at sentencing allowed the court to sentence Movant to a term of imprisonment based on 3553 factors that were incorrect.  Counsel at sentencing allowed the government to continue to insist that [Movant] was responsible for the initial email.  Counsel had the same information as trial counsel to ensure the court had proper information before it."

This claim of ineffective assistance lacks merit on its face, and it should be denied.  The sentencing court heard all the evidence in this case and imposed Movant's sentence based on the jury verdict and the *totality* of the evidence.  As argued by Respondent, the evidence presented at trial established that Movant sent multiple communications to the victim and her parents directly.  Whether Movant sent the initial email or not would have had no impact on the sentence.  Counsel is not required to file frivolous motions or make frivolous arguments.  *Koch*, 907 F.2d at 527; *Green*, 160 F.3d at 1036-37.  The record reflects counsel at sentencing filed a detailed Sentencing Memorandum asking for a downward variance, argued objections to the PSR at sentencing, and was ultimately able to obtain a sentence at the low end of the guideline range despite the

Government's request for a sentence at the high end.  Movant has failed to demonstrate ineffective assistance of counsel at sentencing.

I.  Ineffective Assistance of Counsel on Appeal

Movant was represented by the same attorney during sentencing and on appeal.  Movant summarily argues that counsel was ineffective for failing to bring to the court's attention at sentencing the alleged incidence of prosecutorial misconduct concerning the 404(b) evidence and for failing to develop the record on appeal to raise points of error 3, 4 and 7.  As outlined above, all the underlying claims of ineffective assistance lack merit.  Movant has also failed to show prejudice with respect to his claim of prosecutorial misconduct.  As a result, appellate counsel was not required to put forth frivolous arguments on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). In fact, counsel's obligation on appeal is to winnow out the weaker arguments and put forth those arguments with the most likelihood of success.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (the attorney need not advance *every* argument, regardless of merit, urged by the appellant); *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996).  Movant has failed to demonstrate ineffective assistance of appellate counsel and this claim should be denied.

J.  Cumulative Error Due to Ineffective Assistance of Counsel

Finally, to the extent Movant alleges the cumulative errors of ineffective assistance of counsel denied him a fair trial and due process, warranting a reversal of his conviction, this claim should also be denied.  Errors that did not occur can have no cumulative effect.  *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992).  As discussed above, Movant's claims of ineffective assistance of trial, sentencing and appellate counsel are without merit and, therefore, had no cumulative effect.  This last point of error should be denied.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, the court will address whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the court find Movant is not entitled to a certificate of appealability.

Recommendation

This motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 should be denied. It is further recommended that a certificate of appealability be denied.

Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Assoc'n.,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this 8th day of August, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE